APRIL TERM
1835.

Commonwealth
Bank of Kent'y.
v.
David Clark.

BANK OF THE COMMONWEALTH OF KENTUCKY
v.
DAVID CLARK IMPLEADED WITH WILLIAM J. McELROY.

1. Notes of theBank of the Commonwealth of Kent'y., are bills of credit within the meaning of the constitution of the U. S.
2. A promissory note, the consideration of which was said bills of credit, is void.

APPEAL from the circuit court of Marion county.

Opinion of the court delivered by TOMPKINS, J.[*]

The president and directors of the bank of the Commonwealth of Kentucky on the 19th day of January 1833, commenced their action against Clark on a promissory note made by him to them on the 21st day of September 1822, and payable one hundred and twenty days after date.

The defendant pleaded these three pleas: 1st, nil debet. 2nd. That the right of action did not accrue within five years. 3rd. That the consideration of the promissory note sued on was illegal &c. The two last pleas were demurred to, and the defendants joined in the demurrers. We will first enquire whether the third plea be good. In that plea the defendant states that the legislature of the State of Kentucky, by law, established a bank in the name and on behalf of the Commonwealth of that State, under the direction of a president and twelve directors, to be chosen by joint ballot of both houses of the general assembly of said state, which said president and directors were authorised to appoint a cashier and clerks, and other persons to aid in conducting the same; that the said president and directors and their successors in office were by the said act created a corporation and body politic in law, and in fact by the name and style of the president and directors of the bank of the Commonwealth of Kentucky, so to continue till the 1st day of January 1841, that the whole capital stock of the said bank was by the said act, declared to be exclusively the property of the Commonwealth, and was to consist of three millions of dollars, to be raised and paid in the following manner, to-wit: All monies hereafter to be paid into the treasury for vacant lands of this Commonwealth; all monies hereafter to be paid into the treasury for land warrants, all moneys which may hereafter be raised by the sale of the vacant lands west of the Tennes-

[*] Wash Judge, being absent.

see river—and so much of the capital stock of the Bank of Kentucky as may be found to be due to the state after settlement of the affairs of the bank, that the president and directors of said bank were by said act authorized to issue notes signed by the president and countersigned by the cashier for such sums and with such device as they might deem most expedient and safe, not under the denomination of one dollar, nor over one hundred dollars on behalf of the said corporation, that the said bank by the said act, was authorized to receive money on deposit, discount bills of exchange &c.; also to make loans to the citizens of the state in the nature of discounts on real estate, that the bills or notes of the said bank were by the said act to be received at the treasury of the state, and by all taxgatherers and other public officers, in all payments for taxes or other monies due or to become due to the state, and by all collectors of the county levy, that all the interest arising from the loans and discounts made by the bank after payment of necessary expenditures, was by said act made a part of the annual revenue of the state, and that the revenue of the state unappropriated was made a part of the capital stock of said Bank, to be paid over to the Cashier, subject to such appropriations as might from time to time be made.—That the said president and directors issued notes for such sums and with such devices as were deemed most safe and expedient, & in accordance with said act to the amount of three millions of dollars in behalf of the State of Kentucky and in the name of said corporation, that the said Clark borrowed from the president and directors aforesaid the sum of eight hundred and forty dollars in the notes of said bank issued as aforesaid, and for the consideration of the notes borrowed as aforesaid, he, said Clarke, had made and delivered to the said president and directors the promissory note in the declaration mentioned: the facts stated in this plea being admitted by the demurrer, it is now to be enquired whether the notes, which were the consideration of the promissory note sued on, were bills of credit, the emission of which is prohibited by the constitution of the United State. "The term bill of credit," says Mr. Chief Justice Marshall, delivering the opinion of the court in the case of Craig v. The State of Missouri, "in its enlarged and literal sense may comprehend any instrument by which a state engages to pay money at a future day;" thus including a certificate given for money borrowed. But the language of the constitution itself and the mischief to be prevented, which we know from the history of

APRIL TERM
1835.

Commonwealth Bank of Kent'y.
v.
David Clark.

Notes of the bank of the Commonwealth of Kenty., are bills of credit within the meaning of the constitution of the U. S.

APRIL TERM
1835.

Commonwealth
Bank of Kenty.
v.
David Clark.

the country, equally limit the interpretation of the terms. The word "emit," is never employed in describing those contracts by which a state binds itself to pay money at a future day for services actually received, or for money borrowed for present use, nor are instruments executed for such purposes in common language denominated bills of credit. To emit bills of credit conveys to the mind the idea of issuing paper intended to circulate through the community for its ordinary purposes as money, which paper is redeemable at a future day. This is the sense in which the term has always been understood. See 4 Peters 432.

The court of appeals of Kentucky in Briscoe and Fulkerson v. The Bank of the Commonwealth, say that the case of Craig v. Missouri, is distinguishable from that case: but that court does not mark the distinction. By the statute of Missouri the auditor of public accounts, and the Treasurer under the direction of the Governor, issued loan office certificates: by the act of Kentucky, the president and directors issued bank notes. In Missouri the certificates were receivable at the Treasury of the State, and by all tax gatherers and other public officers in payment of taxes or other monies due to the state or to any county or town therein: in Kentucky the notes of the bank were equally required to be received at their treasury and by the counties, the law of that state does not appear to dictate to the towns as did the law of Missouri. Each state equally pledged public property for the redemption of its paper. Kentucky moreover directed that the unappropriated revenue of the state should be deposited in the bank, thereby still further pledging her faith than did Missouri.

In each state, it is obvious that the legislative body intended its paper "to circulate through the community for its ordinary purposes "as money" and to be redeemed at a future day. In each state its faith was equally pledged by legislative acts to provide a fund for the redemption of its paper. For it cannot be supposed that either could be so forgetful of itself as to issue an amount of paper greater than its property would raise on sale. We are inclined to think that the objects proposed to itself by each State were the same, and that the means used were not essentially different, and consequently, that if the loan office certificates of Missouri were bills of credit, the notes of the bank of the commonwealth of Kentucky were equally so. They were both alike loaned to individuals to be employed in the community as money. We

A promissory
note, the consideration of which
was said bills of
credit, is void.

are then of opinion that the promissory note sued on in this, being given in consideration of the notes of the bank of the Commonwealth of Kentucky which are in our opinion bills of credit is void—and that the plaintiffs cannot recover. Such being the opinion of the court it becomes useless to dispose of the demurrer to the plea of the statute of limitations.

APRIL TERM
1835.

Bartlett
v.
Glasscock & others.

The judgment of the circuit court is reversed.