| 31 | 429 |
| 54 | 185 |
| 31 | 429 |
| 61 | 473 |
| 31 | 429 |
| 65 | 132 |
| 31 | 429 |
| 71 | 487 |

## TURNER VS. WATKINS et al.

1. *Deed of Trust to secure a debt. Legal effect of, etc.*

   A deed of trust executed for the purpose of securing a debt, and to be void upon payment of the debt, and containing a power of sale upon default, is, in legal effect, a mortgage. The grantor retains an equity of redemption which is subject to seizure and sale under execution as other equitable estates are under the statute. But where the grantor parts with his title absolutely, conveying it to the trustee to sell for the purpose of raising a fund to pay debts, it is properly a deed of trust, and no interest, legal or equitable, remains in the grantor. (For a full review of the former decisions of this court, see the opinion).

2. EXECUTION SALE: *Redemption.*

   The provisions of section 2696, of Gantt's Digest, providing for the redemption of land sold at execution sale, applies as well to debts contracted prior, as to those contracted subsequent, to the passage of the act. The case of Oliver v. McClure, 28 Ark., 555, in which the contrary doctrine is held, is overruled.

3. ——————:

   If the act was void as to prior debts, as against the creditor, it would not lie in the mouth of the debtor to object to the redemption by a subsequent judgment creditor, when the prior creditor, who had purchased the property at execution sale, had received the amount bid for the redemption, and was not complaining.

Turner vs. Watkins et al.

4. ESTOPPEL:

Where a defendant in execution assented to the sale, and endorsed on the writ a waiver of advertisement, and subsequent to the sale recognized by various acts the title of the purchaser, he will be estopped from denying the validity of the sale, or that he owned such an interest in the land sold as was subject to seizure and sale under execution.

5. EQUITY OF REDEMPTION: *Right of the purchaser. Tender, etc.*

A purchaser at execution sale of the equity of redemption in real estate, succeeds to all the rights of the mortgagor, among which is the equitable right of redemption by paying the mortgage debt. And a tender of the debt by such purchaser will stop the accrual of interest from the date thereof.

6. ————:

The purchaser at execution sale of the equity of redemption under a deed of trust, does not acquire such an interest in the land as entitles him to maintain an action for the rents.

APPEAL from *White* Circuit Court in Chancery.

Hon. JOHN WHYTOCK, Circuit Judge.

*Rose*, and *J. M. Moore*, for appellant.

*Coody, contra.*

WALKER, J.:

The appellant, Turner, filed his bill of complaint in equity in the White County Circuit Court against Thomas Watkins, William Watkins, Green B. Green, George F. Baucum, and Jesse N. Cypert, in which plaintiff claims title to certain tracts of land as purchased at execution sale, which had, before the judgment lien attached under which he purchased, been conveyed in trust to secure the payment of borrowed money.

Several questions are distinctly presented by the pleadings for our consideration, the most material of which are: *First*—As to whether, when property is conveyed in trust, there remains any estate, equitable or legal, which may be levied upon and sold under execution. *Second*—Whether, conceding this to be true as a general proposition, if the sale under execution is made under the direction and with the consent of the debtor, such

detbor is not estopped from questioning the validity of the sale. *Third*—Whether the payment of the trust debt, or the offer to do so, which in equity is equivalent to payment, is not a discharge of the trust lien, and, when paid, the party paying should not be subrogated to all the rights of the trustee, and, with them, other questions as incident to them, and bearing upon the equities of the parties, is that of the purchase of the trust debt by William Watkins and his subsequent assignment of the same to Green and Baucum.

The facts are stated so clearly in the bill that we need only give the substance of them as set forth in the complaint, omitting only such as are not necessary to a full understanding of the questions put at issue by the pleadings.

It is alleged that on the 9th of June, 1869, Thomas Watkins, to secure the payment of a note for $331.70, at 12 per cent. interest per annum, payable December 25th, 1871, and one other note for $3,168.25, at a like rate of interest, due at the same date, the first payable to Sallie E. Dougan, and the second to her as guardian, conveyed several tracts of land situated in White County, Ark., to Jesse N. Cypert, in trust, with power in the trustee, if the notes were not paid when due, upon notice, to sell the lands, pay the debts and expenses of the trust, and to Watkins, the excess of the money for which the lands should be sold, should such excess remain ; but that if Watkins should, at any time before such sale, pay said debts, interest and cost of the trust, then such conveyance should be void; that on the 4th of November, 1869, Moses Greenwood and son obtained judgment in the Circuit Court of said county, for $1,930.50 debt, and $80.85 damages and costs, which sums were to draw 10 per cent. interest until paid ; that, in February, 1870, execution was issued on said judgment, and levied upon the lands conveyed in trust to Cypert.

The execution was returned without a sale of the property, and on the 10th of July, 1871, a writ of *vend. ex.* was issued, by which the sheriff was commanded to expose the lands so levied upon to sale; that thereafter, but before the sale of the lands, Watkins, the defendant in execution, by a parol agreement, contracted and agreed with the attorney of Greenwood and son, that the sheriff should sell said lands to satisfy the judgment of Greenwood and son; and, in accordance with such an agreement, by his written endorsement upon said writ of *vend. ex.* authorized the sheriff to sell said land, at the court house door in said county, on the 5th day of August, 1871, and therein waived the necessity of an advertisement of the terms, time and place of sale, and that said sheriff did, on said 5th day of August, 1871, in accordance with such agreement, at said court house door, offer said lands to the highest bidder, and Moses Greenwood and son being such bidder, said lands were sold to them for the sum of $916.45, being the residue of their debt, interest and costs of said judgment, and returned said writ fully satisfied.

That, in June, 1868, plaintiff recovered judgment against said Watkins, for the sum of $987.67 debt, and $1.55 costs, with interest upon debt until paid. On the 1st of August, 1872, execution issued upon this judgment, which was placed in the hands of the sheriff; plaintiff then paid to the sheriff $1,052 for Moses Greenwood and son, the sum which they paid for the land at execution sale, with 15 per cent. per annum from date of sale, and all charges thereon, and credited his execution with $991.60, being the amount of debt, interest and costs due thereon, which credits' and payments were endorsed on the execution, and a statement thereof filed with it, which was endorsed by the clerk, on the execution book in his office that he had bid the sum of $991.60 for the redemption of said land; that, on the 8th day August, 1872, said land being unredeemed by said Watkins, or

any other judgment creditor, said sheriff executed a deed for said land to plaintiff; after which Watkins recognized and confirmed plaintiff's title to said lands, by virtue of such purchase, as good and valid, subject to no defeasance or incumbrance, except to said deed of trust to Cypert; and, on the 14th of January, 1873, by written contract entered into with plaintiff, rented the land from him for that year, and agreed to pay plaintiff $1,650 for the rent thereof; and, also, to deliver possession to plaintiff on the 1st of January, 1874; that, on the 24th of February, 1873, William Watkins, the son of Thomas Watkins, bought of Sallie E, Dougan the notes which she held on Thomas Watkins, to secure the payment of which the deed of trust was executed, and took from her an assignment both of the notes and deed, and thereafter, by assignment, assigned them to Greer and Baucum, who claimed to hold the debts and the benefit of the security for their payment, and, at their request, the trustee, Cypert, advertised the property for sale; that plaintiff, in order to remove the prior incumbrance upon the land, created by the deed of trust, tendered to Cypert, the trustee, the whole amount of the debt, interest and cost, secured to be paid by such trust, which was refused by the trustee, under the direction of Greer and Baucum.

Without referring to numerous other allegations in the complaint, the cross complaint of defendants and the amended complaint of plaintiff, which are not necessary, in order to the proper understanding of the material questions to be considered, and many of which may, upon the questions which arise upon the above state of facts become unnecessary to a proper determination of the case, we will proceed to its consideration.

It will be seen that the deed of trust was prior in time to the judgment of Greenwood and son, and that the lands were conveyed in trust to secure the payment of borrowed money, which,

*Vol. xxxi.—28.*

if paid when due, the deed, by its terms, was to be void; if not paid, the trustee was to sell the land, pay the debts and costs, and the excess realized from the sale, if any, to be paid to Watkins.

The first question presented is, whether the deed conveyed to the trustee the entire interest and estate of Watkins, both legal and equitable, in the land, or whether the legal title was conveyed in trust, leaving an equitable estate in Watkins for the redemption of the land. If both the legal and equitable estate were conveyed to the trustee, then there remained in Watkins no estate subject to levy under execution; if, on the other hand, the equitable right of redemption remained in Watkins, then there is no question but that Greenwood and son acquired it by virtue of their purchase at execution sale, and if, as claimed by plaintiff, he, as judgment creditor, redeemed the land by paying Greenwood and son's bid for the same, and by the endorsements and returns upon his own execution, and took a deed from the sheriff for said land, he thereby acquired such an interest in the estate as would authorize him to pay off the prior incumbrance, and succeed to his rights as purchaser.

Prior to the execution of the deed, it is conceded that Watkins was the legal owner of the land, and held a title in fee simple to the same; and when he executed the deed of trust, he necessarily parted with such title and estate as was necessary to give effect to the trust, and nothing more.

The estate must be such, and need be no greater, than is necessary to give effect to the trust thus created; if to sell land, the legal title is necessarily vested in the trustee, because, without it, he cannot convey the legal title: but when the holder of the legal title makes no defeasance, or condition upon the performance of which the trust ceases to exist, then the equitable estate must, of necessity, remain in the *cestui que trust*, because

both estates cannot be united in the same party, the effect of which would be to extinguish the trust. This is expressly held to be its effect by Perry, in his work on Trusts, vol. —, p. 10, paragraph 13, in which he says: "No person can be trustee and *cestui que trust* at the same time, for no one can sue out a subpœna against himself; therefore, if an equitable estate and legal estate meet in the same person, the trust or confidence is extinguished, for the equitable estate merges in the legal estate." "The act of making the trust is," says Mr. Washburn, "the source or origin of two estates, which flow on afterwards independent of each other in point of ownership, until they merge again by being united in the same person."

If, as in the case before us, the trust is coupled with a power of sale upon failure to pay a sum of money, when the money is paid, the purposes for which the power to sell were conferred having been accomplished, or rendered unnecessary, the legal estate vested in the trustee is, by operation of law, merged and and reunited with the equitable estate in the party who executed the deed of trust. But if the money is not paid when due, and the sale takes place, then the legal title passes from the trustee to the purchaser, and draws with it the equitable estate which remained with the vendor after the execution of the trust.

Such being the law as we understand it, we must hold that Watkins, after executing the deed of trust, held an equitable estate, the right of redemption before foreclosure, which was at the time subject to levy and sale under Greenwood's execution; but it by no means follows from this that all equitable interests in every form and purpose of trust are liable to be levied on and sold under execution. To do so would, in many instances, defeat the purposes of the trust.

At the common law, lands were not subject to sale under execution, but by statute (sec. 2630 Gantt's Digest) all real estate,

whether patented or not, whereof the defendant, or any one for his use, was seized in law or equity, shall be subject to execution.

It is not our purpose on the present occasion to attempt drawing the distinction (if, indeed, such can clearly be done) between such equitable estates as may, or may not, be taken in execution, or what restrictions should be placed on the terms, "all real estate," etc., but will limit our inquiry as to whether the particular estate held in the case before us was or not subject to sale under execution.

If the payment of these debts had been secured by a deed of mortgage on the lands, there would be no question of the right to levy upon and sell the mortgagor's equity of redemption, the effect of which would be, as we have repeatedly held, to subrogate the purchaser to the equitable rights of the mortgagor, which would be to pay off the mortgage debt, and hold the estate just as the mortgagor would, if redeemed by him. *Rice* v. *Wilburn et al.*, *ante.*

But instead of securing the payment of these debts by a deed of mortgage, the same end has been substantially accomplished by deed of trust securing the payment of the debt; the legal effect of a mortgage is to convey the legal estate with a defeasance, that if the debt is paid, the deed shall be void, and, if not paid, to remain in force.

If no power of sale is conferred by the deed, the equity of redemption is foreclosed by the court, and the property decreed to be sold. If a trustee is appointed in the deed to sell upon failure to pay, the sale effects substantially that which is effected by a decree of the court, a foreclosure of the equity of redemption.

A deed of trust executed with power of sale upon failure to pay the debt, is in legal effect the same as a mortgage in which

is appointed a trustee to sell upon the same contingency. In each form of convevance the legal title passes to the party empowered to sell, the equities of the grantor are the same, upon the happening of a like contingency (the failure to pay in either); the same equitable right to redeem before sale or foreclosure exists.

This equity of redemption is an estate in the land. So held by Coote on Mortgages, Ch. 14, p. 256; 4th Kent Com., 158; *Burr* v. *Robinson, adm'r.*, 25 Ark., 277; *Rice et. al.* v. *Wilburn et. al., ante.*

No matter by what technical name the instrument may be called, whether a mortgage coupled with a power of sale, or deed of trust, the power to sell placed in a third person, is in substance the same: Law Register, 1863, vol. 2, p. 640, in which the subject of trusts is fully discussed, and references made to the text books, and American decisions, and after a careful review of them, the conclusion reached is, that where the grantor parts with his title, giving it to the trustee absolutely, for the purpose of raising a fund to pay debts, this is properly speaking a deed of trust, but where the conveyance is to secure a debt in case of default, thus assimilating the transaction to a mortgage, and where the intent of the grantor, instead of parting with his estate, is to retain it, in case he performs his obligations according to its terms, instruments of this class are also, but less technically, called deeds of trust, but in substance they are mortgages, with specific powers of foreclosing, or barring the equity of redemption, the effect of which is to afford a creditor an easy, cheap and speedy remedy, and to enable him to avoid delay, expense and the inconvenience of foreclosing in a court, and sale under a decree.

The attributes of a deed of trust for such purpose, and a mortgage with power of sale are the same, both are intended as securities, and, in a legal sense, are mortgages; in both the legal title

passes from the grantor, but in equity he is, before foreclosure,. considered the actual owner in both, and as broadly in one as the other; the grantor has the right to redeem, in other words, the equity of redemption, which can only be barred by a valid execution of the power. .

Every instrument intended to secure the payment of money,. whatever may be its form, and whatever name the party may choose to give it, is, in equity, a mortgage. 2 Sumner, 533; Story's Eq., sec. 1017; 20 Ohio, 469; id., 572; 2 Devason, 555; *Eaton* v. *Whiting*, 3 Pick., 484; *Bloom* v. *Rensalaer*, 15 Ill., 505..

In strict accordance with the authorities above cited, this court. held, *State use Ashley & Watkins* v. *Lawson et al.*, 6 Ark., 269, that if in attempting to create a trust for the use of a third person, all of the rights and estate be reserved to the grantor, that. are reserved in a mortgage power, the fee in the land will remain with the grantor to the same extent that it would if by mortgage,. which we must understand to be the right of redemption, and it was in that case held that such right was subject to levy and sale under execution.

The same question was presented in the case of *Crittenden* v. *Johnson*, 11 Ark., 94, and as we must suppose from inattention to the difference between the facts presented in the two cases, the case of the *State, use of Ashley & Watkins* v. *Lawson* was overruled, without reference to authority, and without reasoning, and evidently without observing the difference between the character of the trust then under consideration, and that decided in *State, use, etc.* v. *Lawson.*

The deed in *Crittenden* v. *Johnson* was executed to a trustee, empowering him to sell real estate, and pay debts; there was no defeasance, no condition for the payment of the money, or the redemption of the lands; no contingency whatever upon which the legal estate was to revert to the grantor; in fact, the very

reverse of the purposes and conditions of the *State, use, etc.,* v. *Lawson.* Both cases may stand upon sound principles of law.

In *Pettit* v. *Johnson,* 15 Ark., 55, like that of *Crittenden* v. *Johnson,* the deed was executed, with power in the trustee to sell certain lands and pay debts. The provisions of the deed are not fully reported, but it seems, from a brief statement of the case, that Thomas Ware owned several tracts of land, and was indebted to William H. Sutton and others, to provide for the payment of which, he executed to his creditors a deed of trust, absolutely to sell the lands, pay the debts, and the excess, if any, to Ware. The sale was to be made absolutely, and without condition; there was no contingency upon which the land was to revert; no right of redemption; no equitable estate was left in Ware. Under this state of case, it was held that although in some respects this interest was much like that of a mortgagor's equity of redemption, it certainly differed in this, that the equity of redemption, as well as the legal estate, was conveyed by the deed; or, if reserved, was dependent upon a contingency, not to happen until after the sale.

The only possible contingency which could arise in this case, was that there might be an excess of money after the payment of the debts—this and nothing more, omitting an inadvertent expression in the opinion, in which it is said that " the equity of redemption, as well as the legal estate, passed."

There was nothing in this opinion conflicting with that of *Crittenden* v. *Johnson,* or *State use, etc.,* v. *Lawson*; there was no equity of redemption; the whole estate was conveyed to be absolutely sold, so that the court, under the state of case presented, was right in holding that there was no estate, legal or equitable, in Ware, upon which to levy the execution.

It has not escaped our observation that the judge who delivered the opinion of the court in this case reviewed the legislative

enactment authorizing a sale of equitable estates, and referred to the consequences which might result from sale of an interest dependent upon contingencies; but the opinion is distinctly placed upon the ground that the conveyance was in its terms absolute, and dependent upon no contingency, leaving the converse of the proposition by inference true, that had there been a defeasance or condition, upon the happening of which the estate should revert to the grantor, there would have remained in him an equitable estate, subject to sale under execution.

In *Hannah* v. *Carrington*, 18 Ark., 85, Carrington and wife conveyed to Hannah, by deed of trust, several tracts of land to secure the payment of debts then due; the deed was to be void on payment of the debts, and a day therefor given. Carrington also conveyed to William B. Easley, forty-two slaves by deed of trust, giving day for the payment of the debts; Carrington died, and an order of the County Court was made to sell the land and slaves, as the property of Carrington's estate; they were sold, and bought in by Rust; the same property was subsequently sold under the deed of trust. The question was presented upon an issue of title, as to whether, after the execution of the deed of trust, there remained in Carrington any estate in the property.

When considering the question of title thus presented, Mr. Justice English said: "Whatever difference there may be between a mortgage and deed of trust in other respects (see *Crittenden* v. *Johnson* and *Pettit* v. *Johnson*), it is manifest that they agree in this, that the debtor has the right in equity to redeem, by paying or tendering the amount of the debt, at any time before foreclosure of the former, or sale of the latter.

" At the time of Carrington's death, the slaves had not passed absolutely out of him, but he had a right to redeem, by discharging the two incumbrances upon them, and his administrator

succeeded to this right. No matter what the interest remaining in Carrington after the execution of the two instruments may be, or what technically called, it is beyond dispute that whatever interest he had, in law or equity, passed to Rust, the purchaser at the sale made under the order of court."

This decision, under the state of case presented, does not conflict with the case of *Crittenden* v. *Johnson*, nor *Pettit* v. *Johnson*, but, in principle, reaffirms the case of *State, use, etc.* v. *Lawson*.

The case of *Cornish* v. *Dews*, 18 Ark., 183, was decided upon principles of equity, which do do not affect the question under consideration.

In the case of *Biscoe* v. *Royston*, Id., 508, the facts were, that Scott was largely indebted, and was the owner of a plantation, slaves, horses, cattle, mules and farming utensils, which he conveyed to Royston in trust, to secure the payment of his debts. By the terms of the deed, if the debts remained unpaid at the expiration of five years, Royston, at the request of the creditors, was to sell the property; in the meantime, Scott was to retain possession of it, employ the negroes and stock in cultivating the land, and annually account for its products, the proceeds of which, when sold, were to be applied in payment of the debts, upon payment of which the property was to be reconveyed by Royston to Scott.

Under this state of case, a sale of the property would, in effect, defeat the trust; the whole estate was conveyed in trust for the purpose of raising money to pay Scott's debts; in fact, Scott held under the trustee, and cultivated the land for the benefit of his creditors. The mortgaged estate was levied upon as the property of Scott, and bought by Royston, who claimed title to it as purchaser at execution sale. Under this state of case, it was held (and we think correctly), that the property was not subject to execution sale.

Turner vs. Watkins et al.

When considering the case, unnecessary importance was attached to our former decisions; the facts of the case were different from either of them, and was properly decided on its own merits.

In the case of *Pope's Heirs* v. *Boyd*, 22 Ark., 533, the deed was, in some respects, like that of *Biscoe* v. *Royston*, but differed in this, that in that case the property was conveyed to enable the trustee to make the money out of the products of the land to be cultivated by means of the slaves, stock and utensils also conveyed in trust, which, if taken in execution and separated from the. trust would have destroyed it; but in the case of *Pope's Heirs* v. *Boyd*, the property was conveyed to secure the payment of a debt at a future day, named in the deed, and, upon failure to pay, the property was to be sold. Thus considered, we must hold, that in so far as it denies the existence of an equity in the grantor subject to levy and sale by execution, it must be overruled. It is with reluctance that we overrule a case which fixes the character of an instrument and the rights of the parties under it, but, in view of the apparent inconsistency of the several opinions delivered upon this question, and the doubts which exist in the minds of the profession and the courts, we have thought it best to review all the decisions, and place each upon reconcilable grounds, or to overrule such as were not reconcilable with the law, as we understand it.

This review of our former decisions will suffice to correct any misapprehension with regard to the case under consideration.

The only error which we deem it necessary to notice was committed in the case of *Pope's Heirs* v. *Boyd*, and of *Crittenden* v. *Johnson*, in overruling the case of *State, use, etc.,* v. *Lawson*, 6 Ark., 269, which must, under the state of case presented, be held as the correct rule, and is fully sustained by the authorities above cited, and fully justifies us in the conclusion, that an equitable

estate—the right of redemption—remained in Watkins, after the execution of the deed of trust to Cypert, which, under the provisions of our statute, was subject to sale under the judgment and execution of Greenwood and son against Watkins.

Having thus disposed of our first inquiry, as to the interest remaining in Watkins after the execution of the deed of trust, and also of the second, the sale of the land under execution to Greenwood and son, our next inquiry is, has Turner, the plaintiff, acquired such title by redemption as to vest in himself the title acquired by Greenwood and son at execution sale.

It is provided, sec. 2696 Gantt's Digest: "When any real estate therein is sold under execution, the same may be redeemed by the debtor from the purchaser or his vendees, or the personal representatives of either, within twelve months thereafter." Section 2698 provides, "that at any time before the expiration of twelve months from the time of sale, any judgment creditor may redeem the same by suing out an execution, and placing it in the hands of the proper officer, and paying to such officer the amount for which such real estate was sold, and 15 per cent. per annum from the date of such sale, with all charges thereon, for the use of the purchaser, and shall offer to credit his execution with a sum equal to at least 10 per cent. of the amount for which the land was sold, which offer shall be accepted as a bid, all of which shall be endorsed upon said execution, and a statement thereof filed with the execution upon which the land was sold; whereupon the clerk shall endorse in the proper place upon the execution book, that said creditor has bid for the redemption of said property."

The plaintiff is shown to have complied strictly with the provisions of this section.

Sec. 2699 provides: "That unless the purchaser shall, within thirty days, pay the 10 per cent. bid by the judgment creditor,

the same shall operate as a redemption of said property by such creditor, who shall succeed to all the rights and liabilities of such purchaser."

Twelve months allowed for redemption having expired without payment by Greenwood and son, the sheriff made plaintiffs a deed to the land bid off by them.

Counsel for Watkins contend, that conceding all this to be true, the debt, upon which the judgment of Greenwood and son was rendered, was contracted before the statute provision took effect, and was not embraced within its provisions, their debts having been created in 1860 and 1867, and the act authorizing redemption, in 1868.

To sustain this position, we are referred to Rorer on Judicial Sales, and to several adjudicated cases cited by Rorer, in support of that position; in addition to which a decision of our own court, *Oliver* v. *McClure*, 28 Ark., 555, in which it was held, that the provisions of the Civil Code of Practice, respecting the redemption of lands sold under execution, do not apply to judgments rendered on contracts made before the adoption of the Code.

It may be remarked that this opinion was delivered by a special judge, and by a divided court, two out of five dissenting.

The decisions referred to in support of the position assumed by the counsel for Watkins, and relied upon in the case of *Oliver* v. *McClure*, do but recognize a well established rule, that legislative acts which impair the obligation of contracts, are void; but before we can give them application to the statute provisions, which, after sale, confer upon the debtor the right to redeem his property within twelve months, by paying the amount bid for it, and 15 per cent. in addition, we must inquire whether such act does, in fact, impair the obligation of the contract.

In the case of *Oliver* v. *McClure*, the real estate of the judgment debtor was sold to satisfy a debt contracted before the redemption act of 1868. McClure became the purchaser, and moved to compel Oliver to execute to him a deed, without allowing time for redemption. The contract upon which the judgment was rendered was to pay a sum of money at a given day. There was no delay in rendering the judgment, nor in executing it; the land was levied upon, and exposed to sale for cash in hand, and the money paid over to the creditor. This was all he could ask. Whether the debtor was or not allowed time to redeem his property was a matter of no significance to him, and most assuredly the obligation of the debtor was not impaired by giving him time to redeem, nor could the creditor be incidentally prejudiced upon the assumption, that if the land had been sold without the privilege of redemption, it would have brought more money. The 15 per cent. upon the purchase money paid for redemption was ample indemnity to the purchaser, or, if redeemed by the defendant in execution, the land would have again been subject to sale for further satisfaction, in case the debt had not been fully paid.

A glance at the cases cited in *Oliver* v. *McClure* will show that they were not applicable to the state of case then under consideration, but were applicable to cases where the creditor had been prejudiced by varying the time, terms or conditions of his contract.

Thus, in *Burton* v. *Bolander*, 49 Green (Iowa), 393, it was held that remedial directions to enforce rights may be changed by statute, but not the substantial rights of the parties contracting.

In *Willard* v. *Longstreet*, 2 Doug. (Mich.), 172, the law requiring that the property in execution should, before sale, be appraised, and not sold for less than two-thirds of its appraised value, was held to impair the obligation of the contract entered into before the passage of the act.

In *Bungardner* v. *County of Howard*, 4 Mo., 60, a stay law was declared unconstitutional; and, without further reference to authorities, all the cases cited refer to acts which impair the obligation of the contract, or the remedy for enforcing it.

This decision of our court is so clearly erroneous, that we must hold it not a proper interpretation of the law.

In the case now before us, the law which was in force at the time Watkins contracted with Greenwood and son, gave the right of sale for cash in hand, and the law of 1868, which conferred upon the defendant in execution the right to redeem, did not, in this respect, change the former law. The sale was required to take place under like process, and for cash in hand. Greenwood and son, the creditors and purchasers of the land, do not complain that the obligation of their contract has been impaired, and most assuredly Watkins, the other contracting party, had no cause to complain that time to redeem the property sold had been given him.

We must, therefore, hold, that having complied with the provisions of the law conferring the right of redemption upon judgment creditors, and having acquired title by deed from the sheriff, Turner, the creditor, must be regarded as the purchaser of said property, as fully and to the same extent as if he had been the original bidder at the execution sale.

But should we be mistaken in this position, the question arises, whether, under the state of case presented by the evidence, the defendant is not estopped from taking advantage of it.

In the first place, Watkins, the defendant in the execution, recognized and assented to the sale of the property under Greenwood and son's execution; he entered into an agreement with their attorney that the sale should be made without advertisement, etc., and also for time in which to make redemption. Cypert, the attorney, appears from his deposition to have had personal knowledge of all the transactions connected with the sale

of the land, and of its redemption.  He says that himself and partner in the practice of law were entrusted by Greenwood and son with the collection of these debts, and obtained a judgment, upon which the land in controversy was sold; that after the property was levied upon, Watkins made some payments, and the executions were returned without sale; that subsequently, Greenwood and son urged the collection of the debts.  Witness saw Watkins, who said he was unable to raise the money; did not like his property to be advertised and sold publicly.  Witness told him if he chose to do so, that he could, by an endorsement upon the execution, waive an advertisement, which, as witness understood, was done; his partner, Holland, attended the sale, and bid off the land for Greenwood and son, for the entire debt and cost, according to an agreement entered into between witness and Watkins, which was, that the attorneys of Greenwood and son should buy in the land, giving for it the whole amount of the debt and costs, with an agreement that Watkins was to have twelve months in which to redeem, by paying 15 per cent. per annum, as provided under the Code Practice.

About the time the right of redemption expired, witness called the attention of Watkins to the fact, and advised him to prepare for redemption, and afterwards went with Watkins to the clerk's office to arrange for redeeming the lands, when he ascertained that the lands had been redeemed by plaintiff as a judgment creditor.

Witness and Watkins then went to see plaintiff, and requested him to abandon or release his bid.  Plaintiff declined to do so, because an endorsement of the bid had been entered of record, after which he doubted whether it could be done; plaintiff told Watkins that he had no disposition to take the lands from Mrs. Watkins; that he only wished to secure himself in what Watkins owed him. After leaving plaintiff, Watkins expressed a doubt that plaintiff

wished to take advantage of him. Witness proposed to Watkins to act as the mutual friend of himself and plaintiff, and afterwards saw plaintiff and intimated to him Watkins' fears. Plaintiff answered that he had no disposition to deprive Watkins of his property; that he only wished to secure what Watkins owed him, and named the judgment which he held against Watkins, a debt due Mrs. Quarles, and one due Turner and Moore. After some discussion as to the amount of indebtness of Mrs. Quarles, terms were agreed upon between Watkins and Turner.

Witness says Watkins wished him to draw up the agreement between them; not having time to do so, he told Watkins that Turner would draw it up.

The written agreement is identified and made an exhibit, bearing date 14th of January, 1873, signed by both Watkins and Turner. By its terms and provisions Watkins rented of Turner the lands mentioned in the deed of trust, and held by Turner under the sheriff's deed, for the year 1873, for the consideration of $1,650, the lands to be delivered by Watkins to Turner on the 1st day of January, 1874. It was also part of the same agreement that upon the payment to Turner of $4,635.67, the amount agreed upon as being due by Watkins to Turner, Turner was to convey, by deed, the lands so held as purchaser at sheriff's sale to Mrs. Watkins and her children.

Watkins in his answer does not deny the execution of this instrument in terms, but that owing to his embarrassed circumstances, and the confidential relations which existed between Turner and himself, Turner having for many years been his attorney and legal adviser, he was induced to execute the instrument, which contained different recitals of contract from those agreed upon and intended between the parties. And it is for the purpose of setting aside this contract, that Watkins filed his cross complaint.

Much evidence has been taken tending to show the embarrassed circumstances of Watkins, and that for some years before this transaction Turner had been his attorney and confidential advisor.

All of the allegations in the cross bill are positively denied by Turner.

The burden of proof to sustain the allegations in the cross bill was upon Watkins, and we think them not sufficient to sustain the cross complaint, but to the reverse of this. Cypert, who was present at the time the contract was made, states that the written agreement conformed substantially to that made between the parties.

In addition to this there is other evidence tending to show that Watkins did rent the land from Turner, and recognize him as the owner of it, and, under this state of case, another question arises, which is: whether, conceding the redemption of the land, and the deed executed under it by the sheriff to Turner to be insufficient to vest in him title to the land, Watkins, who claimed an interest in it, and by agreement consented to its sale, and thereafter and when Turner had procured a deed by redemption, recognized Turner as the legal owner of the land, rented it of him as landlord and agreed to pay him rent for it, and agreed to give possession of it at the end of the year, and contracted with him for the purchase of the land, is not estopped from asserting any claim to the land, adverse to Turner? We think he is estopped.

It is a principle of law in estoppel, that when a party once waives and abandons a right, he shall not afterwards be heard to assert it. To this principle is to be attributed the familiar rule, that one who stands by and sees his property sold under an execution against another, or by a bailee of the property, cannot assert his title against an innocent purchaser.

*Vol. XXXI.—29.*

During the time of these transactions, Watkins was in possession of the land, he made no objection at the time of sale but assented to and authorized it; he most clearly recognized the validity of Greenwood's purchase by his efforts to redeem under him, and of the title of the plaintiff by his contract of rent and offer to purchase from him. *Major* v. *Deer*, 4 J. J. Marsh, 586; *Reid* v. *Heasley*, 2 B. Monroe, 254; *Moore* v. *Simpson*, 3 Met., 349; *Lay* v. *Nevil*, 25 Cal., 545; Rorer on Judicial Sales, sec. 442, p. 57, are authorities which sustain us in the conclusion that upon this ground also the title of Turner should be sustained.

The great mass of testimony taken in the case upon questions growing out of the relation existing between Watkins and Turner, as attorney and client, sufficiently show that such relation did exist prior to this transaction, and that Turner's retainer did continue him in the service of Watkins in some instances after that time, but it does not appear that he was such attorney in the matters connected with this suit.

It was not with Turner, or by his advice, that his land was sold under the Greenwood judgment, but in person with Cypert, the attorney for Greenwood and son; he made no pretense at that time that he had no interest in the land or that it was not subject to sale, but that he did not wish his property sold at public sale, but wished it sold without advertisement, and bid off for Greenwood and son, for the full amount of their judgment, giving him time to redeem. Turner did not advise this course, and had nothing to do with it, but being the holder of a judgment upon Watkins availed himself of his privilege of redeeming under the statute, which he had a right to do.

If Turner had acted as the attorney and advisor of Watkins, a court of equity would hold him to the strictest account faithfully and honorably to discharge his duty as such, and would deny to him any advantage growing out of such relation.

But such we have seen is not the case.

If Watkins' embarrassed circumstances prevented him from completing his purchase with Turner, or when he had the power to do so, of paying off his trust debt, it was his own misfortune, not Turner's misconduct as his attorney, which has placed him in his present condition.

So far as the interest of Greer and Baucum are concerned, all of their rights seem to have accrued after the sale of the equity of redemption under Greenwood and son's judgments, and consequently at a time when Watkins had no estate or interest in the land, equitable or legal, and therefore acquired nothing by the conveyances subsequently made by Watkins to them, or if they had, should have asserted their rights by way of cross bill, which they have failed to do. As purchasers of Mrs. Dougan's trust debts, they succeeded to the rights which she had to prior satisfaction out of the land, and are entitled to receive the amount of the debts so purchased, with interest thereon up to the time of tender.

Turner, the purchaser of the equitable interest of Watkins, succeeded to all of Watkins' rights, among which was the equitable right of redemption by paying the prior incumbrance, and holding the land under the sheriff's deed; should he fail to do this, day being given for that purpose as he had once tendered the money to redeem, the land should be sold by the trustee under the deed of trust, or by a commission appointed by the court for that purpose; the proceeds of the sale be first applied to payment of the debt, and if the tender be not made good, then the entire interest to day of sale, and costs of trust sale, the residue if any, to Turner the plaintiff.

As regards the cross complaint of Watkins, which sought a decree setting aside the contract to rent, we think that the title to the land remained all the while, after the maturity of the

debts secured by the deed of trust, in the trustee, and that Turner had no such interest in the land at the time he rented the same to Watkins as to entitle him to the rents, and that a decree should be rendered perpetually enjoining the collection of the same.

These are the only material questions which we deem it necessary to notice.

The decree of the court below must be reversed and set aside with costs, and the cause remanded to the court below, with instructions that a decree be rendered in said court, in accordance with the opinion herein expressed, and according to the rules of equity practice, so as to vest in the parties the rights accorded to them under this decision.

---

Hon. E. H. ENGLISH, CH. J., dissenting:

Whilst I do not dissent from the conclusion reached by my brother judges, upon the whole record in this case, I prefer to express my own views in relation to the sale of Watkins' equity of redemption in the lands conveyed by him to Cypert as trustee, to secure the payment of the debts which he owed to Mrs. Dougan.

Equitable interests in estates were not, by the common law, subject to sale on execution.

What equitable estates may be sold on execution from the courts of law, under the statute (Gantt's Digest, sec. 2630) has been the subject of judicial controversy in this, as well as in other States, where like statutes have been enacted.

In *The State, use etc.,* v. *Lawson et al,* 6 Ark. (1 Eng.) 269, the rule which generally prevails in the United States, that the right of a mortgagor to redeem his estate is liable to be taken upon execution by his creditors, was recognized. Freeman on Executions, sec. 190.

But in that case, the debtor conveyed his land to a trustee to secure the payment of money borrowed of the creditor, the deed to be void on payment of the debt at maturity; but on failure to pay the debt, the trustee (a third party) was empowered to sell and convey the land, and pay the debt out of the proceeds of sale ; and the court held, that the right of the maker of the trust deed to redeem the land, before sale by the trustee, was the subject of sale on execution.

The court said, if the maker of the deed had conveyed the land to the trustee, in trust for the creditor, unconditionally and without reserving to himself any right of redemption, by payment of the debt or the performance of any other duty, it would have been strictly a deed of trust, and nothing would have remained in the maker of the deed, which could have been sold on execution.

The first and last of the above propositions have never been controverted by any of the later decisions of this court, and had the second proposition, which was the point before the court in the case referred to, been adhered to, it would perhaps have been in harmony with the weight of authorities. But it was overruled in *Crittenden* v. *Johnson*, 11 Ark. (6 Eng.), 94, twenty-seven years ago, and the ruling in this case, has been uniformly recognized and followed in all the latter cases, and I am reluctant to disturb a rule of property so long established. If the rule has proved an evil, which I doubt, it is better to change it by legislation made to affect future transactions, than for the court to hazard the infliction of loss and wrong upon persons who have acted in reference to the rule, by reversing its own decisions.

The opinion of the court in *Crittenden* v. *Johnson*, is very brief, on the point in question, and may not have been quite satisfactory to the legal profession ; but it was approved and supported in *Pettit et al* v. *Johnson et al*, 15 Ark., 100 ; *Cornish* v.

*Dews et al,* 18 ib. 175; *Biscoe* v. *Royston,* ib. 519; and in *Pope's heirs* v. *Boyd,* 22 Ark., 538.

That Watkins had the right of redemption in the lands conveyed by him to Cypert as trustee, to secure the payment of the debts which he owed Mrs. Dougan, there can be no doubt, but that this contingent right could be sold on execution I cannot affirm, without overruling some of the decisions of this court of long standing; and upon which many persons, who have heretofore made such deeds of trust, may be relying for protection against such sales.

It was well said in *Pettit et al* v. *Johnson,* that: "A sale of an interest so uncertain, as to the nature and extent of the interest, as to the time when the purchaser could take the benefit of his purchase, would, in most instances, be attended with great loss to the debtor, and of very little benefit to the creditor, which are the prominent considerations to be considered and guarded against in-judicial sales. We must presume that the legislature did not loose sight of this in passing the act authorizing the sale of equitable estates under execution. They must have known that no one would be inclined to bid the value of interests so doubtful, and to enjoy which the purchaser would have to resort to a Court of Equity to ascertain his true interest, and affirm his title."

But this argument does not apply to the validdty of the sale in this case, because it appears that Watkins gave his written consent to the sale under execution in favor of Greenwood and son, waiving public notice of the time of sale, etc.; and he is estopped from setting up any objection to the sale.